**Karyn E. WARMACK, Plaintiff,**

v.

**DELTA AIRLINES, INC., et al., Defendant.**

No. C–1–90–040.

United States District Court, S.D. Ohio.

July 26, 1993.

David Torchia, Cincinnati, OH, for plaintiff.

David Croall, Cincinnati, OH, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court following trial on July 19 and 20, 1993, and upon evidence and testimony presented therein. In this action Plaintiff asserts retaliatory termination by the Defendant in violation of 42 U.S.C. 2000e–3. In accordance with Rule 52, Fed.R.Civ.P., the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

### I.

### FINDINGS OF FACT

1. Karyn E. Warmack, Plaintiff, was employed with Delta Airlines, Inc., Defendant,

---

as a Reservation Sales Agent from October 1978 until February 1989, at which time her employment was terminated. Warmack's entire career with Delta was spent working in the Reservation Sales Department.

2. Reservation Sales Agents are responsible for receiving telephone calls from, and providing service to prospective customers. A primary objective of a Delta Reservation Sales Agent is to identify the customers' needs and to accommodate those needs. Delta is a service-oriented business and a customer's first contact with Delta is often through a reservation sales agent.

3. Throughout her tenure of employment with Delta, Warmack had been counseled and disciplined on many occasions concerning deficiencies in her job performance and dependability. Warmack had difficulty meeting Delta standards in the areas of attendance, productivity, and image displayed to customers. During her ten year employment with Delta, Warmack was placed on probationary status on three occasions (January 8, 1982, June 22, 1982, and August 18, 1988); final warning status on three occasions (December 29, 1983, August 14, 1983, and January 12, 1989); and was also recommended for termination on two separate occasions (August 2, 1985 and February 8, 1989).

4. Warmack was placed on a six-month probation in August 1988 due to what defendant believed to be deterioration in job productivity, attendance and dependability. Warmack was informed at that time that "any regression in any area of your job performance will result in further disciplinary action, which may include termination."

5. Warmack filed her first charge of discrimination on August 26, 1988, claiming that her probation was discriminatory.

6. Delta continued to counsel Warmack in late 1988 about a variety of performance problems, including productivity, break time, language and image to customers.

7. On January 6, 1989, while Warmack was on probation, Warmack received a call from a Delta customer, Ms. Richter.

8. The telephone call was monitored by Betty Pyles, Warmack's supervisor. Ms. Pyles observed Warmack interrupting the customer and speaking to her in a condescending manner.

9. Later on January 6, 1989 Warmack met with Pyles and Chief Reservations Supervisor Mary Ann Haynes, who apprised Warmack that she had spoken with the customer in a condescending manner and that she would be suspended pending further review of her file.

10. At the meeting with Pyles and Haynes, Ms. Warmack suggested calling the customer to clarify her tone during the conversation. Haynes advised Warmack that calling the customer was not necessary.

11. On January 12, 1989, in part as a result of her January 6, 1989 telephone call with Ms. Richter, Delta issued Warmack a Final Warning letter. The final warning extended her probation and advised her that she "must improve to an acceptable level in all areas of your job performance and be removed from probation or a recommendation for termination will be made" (Joint exhibit XIV).

12. Warmack filed her second charge of discrimination on February 2, 1989, alleging that her final warning and extended probation were discriminatory and retaliatory for her earlier filing with the OCRC.

13. In February 1989, Ms. Warmack called Ms. Richter's home in an effort to speak with Ms. Richter. Warmack left messages, but Ms. Richter did not return the calls.

14. On February 6, 1989 Ms. Warmack contacted Ms. Richter at home by telephone. Warmack advised Ms. Richter that their January 6, 1989 conversation had been monitored by her supervisor and she had been criticized for speaking in a condescending manner. She did not mention her charge of discrimination against Delta.

15. Ms. Richter advised Warmack that she did not wish to get involved and asked how she had gotten her name and phone number.

16. On February 7, 1989, Ms. Richter called Delta and advised Maureen Mello, reservations supervisor, that Ms. Warmack had called her on February 6, 1989. Ms. Richter

was very concerned by the call from Warmack, and was particularly concerned that Warmack had the customer's name, address and telephone number.

17. On February 8, 1989, Mary Ann Haynes called Warmack and advised her of Ms. Richter's call to Delta the day before. Warmack admitted to making the call but said she had done so at the advice of counsel. No probative evidence was presented supporting the assertion of "advice of counsel." Haynes advised Warmack that her call to a customer was a serious violation of Delta policy and that her file would be reviewed by Delta's personnel department in Atlanta, with the Cincinnati reservations office's recommendation for termination.

18. After a review of Ms. Warmack's entire personnel file, it was determined that her employment should be terminated due to Warmack's improper call to Ms. Richter, and Warmack's inability to maintain Delta standards for continued employment. Delta advised Ms. Warmack of the termination decision on February 16, 1989.

19. Ms. Georgetta Calvin, Manager of the Reservations office, was aware of both the August charge and the February charge of discrimination brought by Ms. Warmack against Delta. Calvin told no one else about the pending discrimination charges against Delta.

20. Delta has policies prohibiting conflicts of interest, including the use of information obtained during employment. Section 1000.2 of Delta's Standard Practice Manual provides in pertinent part,

> Conflicts of interest most often arise in the following situations:
>
> ... (4) when an individual misuses information obtained in the course of employment by Delta.

(Joint exhibit XX).

21. Delta has a recognized policy prohibiting Delta employees from calling a customer for anything other than Delta business. Such policy is not in written form but is incorporated into various written Delta business policies.

22. Delta has consistently enforced its rule prohibiting an employee from mis-using information obtained in the course of employment, and has terminated other employees, who did not have pending discrimination charges, for this offense.

23. Delta has continued to employ many employees, including several in its Cincinnati office, who have filed discrimination charges and who have participated in investigations of such charges.

## II.

### OPINION

The Sixth Circuit has determined that to establish a case of retaliatory discharge, a plaintiff must demonstrate 1) that he was engaged in an activity protected by Title VII; 2) that the defendant was aware that he was engaged in such activity; 3) that subsequent to acquiring knowledge of this activity, the defendant took action that adversely affected the plaintiff's employment; and 4) that his engagement in the protected activity caused the defendant to take the adverse employment action. *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990), *reh'g denied, en banc* (6th Cir. July 10, 1990), *and cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990). Since Ms. Warmack has failed to present evidence sufficient to meet the fourth prong, no discussion of the first three prongs is necessary.

Delta presented evidence that Ms. Warmack was discharged as a result of her failure to satisfy Delta employment requirements. These requirements prohibit Delta employees from using information obtained in the course of their employment for any purpose other than to transact Delta business. Ms. Warmack violated this requirement by using such information (her memory of a Ms. Richter's name and address) to acquire the telephone number of Ms. Richter for personal use.

Ms. Warmack telephoned Ms. Richter in order to obtain Ms. Richter's impressions of a prior conversation between these women concerning Delta business. Evidence showed that there is a recognized policy against making such personal calls to Delta customers.

Ms. Warmack's argument is further weakened by her admission that she did not mention her pending discrimination charge to Ms. Richter during the course of their second phone conversation. As a result of this conversation, Ms. Richter phoned Delta the next day to complain. This complaint initiated the cycle of events that eventually let to Ms. Warmack's termination. Evidence established that employees who did not have pending civil rights suits had similarly been discharged for calling customers for a purpose other than to transact Delta business.

Ms. Warmack's long history of employment violations (Defense exhibit V) and Delta's repeated counseling and forbearance of discharge establish a legitimate reason for a termination of employment after the events described above.

The Court considers pertinent the comment of the Honorable Ralph Guy who stated as a District Judge and in a slightly different context:

> Congress did not intend that every employer who discharges a person in the protected ... group should automatically find himself at the other end of a ... discrimination charge.

*Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980).

### III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 29 U.S.C. 2000e, *et seq.*

B. To establish a claim of retaliatory discharge plaintiff must demonstrate:

(1) that he engaged in an activity protected by Title VII;

(2) that his exercise of his protected civil rights was known to defendant;

(3) that defendant thereafter took an employment action adverse to the plaintiff; and

(4) that there was a causal connection between the protected activity and the adverse employment action.

*Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990), *reh'g denied, en banc* (6th Cir. July 10, 1990), *and cert.*

*denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

C. There is no causal connection between Ms. Warmack's discrimination actions and her discharge from Delta. Delta discharged Ms. Warmack for repeated failures to fulfill Delta's employment requirements. This reason for discharge was not a pretext used to disguise retaliation by Delta. For these reasons, Ms. Warmack has failed to satisfy the fourth prong of the retaliation test. *See Canitia,* 903 F.2d at 1066.

In accordance with the foregoing, judgment should be and it is hereby rendered in favor of Defendant Delta Airlines, Inc., and against Plaintiff Karyn E. Warmack.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.

IT IS SO ORDERED.